John W. HECHINGER, et al., Plaintiffs,

v.

METROPOLITAN WASHINGTON AIRPORTS AUTHORITY, et al., Defendants.

Civ. A. No. 92–556 (JHG).

United States District Court, District of Columbia.

Jan. 31, 1994.

Opinion Modifying Decision Feb. 15, 1994.

---

Patti A. Goldman, Alan B. Morrison, Paul R.W. Wolfson, Public Citizen Litigation Group, Washington, DC, for plaintiffs.

William T. Coleman, Jr., Donald T. Bliss, Debra A. Valentine, O'Melveny & Myers, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs, John W. Hechinger, Sr., Craig H. Baab, and Citizens for the Abatement of Aircraft Noise, Inc., initiated this action challenging the constitutionality of defendant Board of Review. The Board of Review is an entity with the power to review certain actions of defendant Metropolitan Washington Airports Authority ("Airports Authority"), which was created to operate the metropolitan Washington airports located in the Virginia suburbs. Plaintiffs allege that the Board of Review violates the doctrine of separation of powers and that its members are appointed in violation of the Appointments Clause [1] and serve in violation of the Incompatibility and Ineligibility Clause.[2]

Through this action, plaintiffs seek: (1) a declaration that the Board of Review is unconstitutional; and (2) an order enjoining the Board of Review from exercising its review authority and enjoining the Airports Authority from performing any actions that it is required to submit to the Board of Review. The parties filed cross-motions for summary judgment. In addition, the United States filed a statement of interest pursuant to 28 U.S.C. § 517, in which it offered its views supporting the plaintiffs' position that the Board of Review is unconstitutional. For the reasons expressed below, plaintiffs' motion for summary judgment is granted and defendants' motion for summary judgment is denied.

## I. Background

These parties are before this Court for the second time to litigate the constitutionality of the Board of Review. Although the new Board of Review will be evaluated without any taint from the earlier proceedings, it is necessary to review certain details from the earlier litigation to properly understand the present action. *See Century Communications Corp. v. FCC*, 835 F.2d 292, 299 (D.C.Cir.1987), *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2014, 2015, 100 L.Ed.2d 602 (1988).

The federal government historically maintained control over the two metropolitan Washington airports in the Virginia suburbs, Washington National Airport ("National") and Dulles International Airport ("Dulles"). In the mid–1980's, however, the Secretary of Transportation ("Secretary") determined that it was necessary to shift control over these airports away from the federal government to ease the burden of financing capital improvements. The Secretary recommended that the federal government transfer control over these airports to a regional authority and appointed an advisory commission to develop a plan to create this authority.

The advisory commission recommended that this regional authority be created by a congressionally approved compact between Virginia and the District of Columbia. The advisory commission further recommended that an eleven-member Board of Directors, composed of individuals who were neither elected nor appointed officials, govern the authority, and that ten of these directors reside in the metropolitan Washington area. These recommendations were intended not only to ensure the non-political nature of the authority but to protect local interests as well.

In accordance with the Metropolitan Washington Airports Act of 1986, Pub.L. No. 99–591, 99th Cong., 2d Sess. (1986) ("Transfer Act") (codified at 49 U.S.C.App. §§ 2451–2461), Virginia and the District of Columbia passed legislation to establish the Airports Authority. *See* 1985 Va.Acts, ch. 598, as amended by 1987 Va.Acts ch. 665; 1985 D.C.Law 6–67, as amended by 1987 D.C.Law. 7–18. The Transfer Act authorized the transfer of operating control over National and Dulles to the Airports Authority, which was to be independent of the federal, Virginia, and District of Columbia governments. 49 U.S.C.App. § 2454(c)(6). The Transfer Act established a Board of Directors to govern the Airports Authority, but mandated the creation of the Board of Review to review certain actions of the Board of Directors.

The original Board of Review was composed of nine members of Congress, eight of whom served on specified congressional com-

---

1. United States Const. Art. II, § 2, cl. 2.

2. United States Const. Art. I, § 6, cl. 2.

mittees and none of whom could be from Maryland, Virginia, or the District of Columbia. 49 U.S.C.App. § 2456(f)(1). The Board of Directors had to submit many core decisions to the Board of Review for approval, including the adoption of its budget, authorization of bonds, promulgation of regulations, adoption of a master plan, and the appointment of its chief executive officer. 49 U.S.C.App. § 2456(f)(4)(B). Significantly, the Board of Review could veto any of these core decisions. 49 U.S.C.App. § 2456(f)(4)(D). Moreover, the legislation provided that the Airports Authority could not independently carry out any of these core functions if a court declared the Board of Review unconstitutional. 49 U.S.C.App. § 2456(h).

The Airports Authority assumed operating responsibility of National and Dulles in mid-1987, pursuant to a lease that contained all of the provisions of the Transfer Act. Subsequently, plaintiffs filed a lawsuit challenging the constitutionality of the original Board of Review. In that earlier lawsuit, *Citizens for the Abatement of Aircraft Noise, Inc. v. Metropolitan Washington Airports Authority,* 718 F.Supp. 974 (D.D.C.1989), *rev'd in part,* 917 F.2d 48 (D.C.Cir.1990), *aff'd,* 501 U.S. 252, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991) [hereinafter *"CAAN I "*], the Supreme Court held that the Board of Review, as then comprised, was unconstitutional.[3] The Court determined that the Board of Review exercised sufficient federal power to mandate separation of powers scrutiny even though the Airports Authority was technically a creature of state law. —— U.S. at ——, 111 S.Ct. at 2306. Separation of powers scrutiny was necessary because transfer of control over National and Dulles was conditioned on the creation of the Board of Review and the federal government has a strong and continuing interest in the operation of these airports. *Id.* at ——, 111 S.Ct. at 2307.

The Supreme Court further determined that the Board of Review was an agent of Congress. Membership on the Board of Review was restricted to members of Congress, all but one of whom served on particular committees. Thus, the Board of Review was composed exclusively of members of Congress and Congress could control who served on the Board of Review by altering the membership on the relevant committees. In essence, Congress had the power to appoint and remove members of the Board of Review. *Id.* at —— – ——, 111 S.Ct. at 2307–08.

In sum, the Court invalidated the Board of Review because it was "an entity created at the initiative of Congress, the powers of which Congress has delineated, the purpose of which is to protect an acknowledged federal interest, and membership in which is restricted to congressional officials." *Id.* at ——, 111 S.Ct. at 2308. The Board of Review was simply an improper attempt by Congress either to assume executive responsibilities or to exercise legislative authority in violation of the bicameralism and presentment requirements of Article I, Section 7. *Id.* at ——, 111 S.Ct. at 2312.

In response to the Supreme Court's decision, Congress passed the Metropolitan Washington Airports Act Amendments of 1991, Pub.L. No. 102–240, Title VII, 105 Stat. 2197 (Dec. 18, 1991) ("1991 Amendments"). The 1991 Amendments retained the Board of Review, but altered its composition, the qualifications for membership, and its powers.[4] President Bush signed the 1991 Amendments into law on December 18, 1991, but expressed concern about the constitutionality of these provisions in his signing statement:

During congressional consideration of amendments intended to cure the defects found by the Supreme Court, the Administration expressed the view that the new Board of Review created by Title VII would violate the Appointments Clause of the Constitution. We adhere to this view,

---

**3.** In the earlier lawsuit between these parties, the United States filed a statement of interest supporting the defendants' position that the Board of Review was constitutional.

**4.** The 1991 Amendments retained many aspects of the old Board of Review, notably the provision that the Airports Authority cannot perform any action subject to oversight by the Board of Review if a court declares the Board of Review unconstitutional.

noting that the matter will now be resolved in court.

Plaintiffs' Motion for Summary Judgment, Exhibit A.

The new Board of Review is composed of nine individuals, all of whom the Board of Directors must select from lists submitted by the Speaker of the House ("Speaker") and the President *pro tempore* of the Senate ("President *pro tempore*"). 1991 Amendments § 7002(a)(1). Although the Board of Directors may request additional recommendations, there is no requirement that the Speaker and the President *pro tempore* submit more names than the number of vacancies on the Board of Review. *Id.* Further, the Board of Review is not expressly limited to members of Congress. To qualify for membership on the Board of Review, a person must: (1) have experience in aviation matters and in addressing the needs of airport users; (2) be a frequent user of Metropolitan Washington Airports; and (3) be a registered voter in a jurisdiction other than Virginia, Maryland, or the District of Columbia. 1991 Amendments § 7002(b)(2)(C). In addition, members may be removed for cause by a two-thirds vote of the Board of Directors. 1991 Amendments § 7002(f)(1).

The 1991 Amendments also altered the power of the Board of Review. The Board of Review no longer has the express veto power that its predecessor enjoyed. Instead, the new Board of Review has the power to make "recommendations" to the Board of Directors regarding each of the core functions over which the original Board of Review had a veto power plus several additional core functions, such as the award of a contract, the design of a terminal, and transactions involving land. 1991 Amendments §§ 7002(d)(1), (2). If the Board of Review makes such a recommendation, the proposed action may take effect only if the Board of Directors adopts the recommendation or if the Board of Directors submits the proposed action to Congress and waits a specified number of days. 1991 Amendments § 7002(d)(2)(D).

## II. *Discussion*

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Plaintiffs claim that the 1991 Amendments did not remedy the constitutional defects of the Transfer Act. Specifically, plaintiffs make two related challenges to the new Board of Review. First, plaintiffs allege that the new Board of Review is "a congressional agent that may not, under the Constitution, exercise retained federal power to control the actions of the Airports Authority." Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiff's Mem.") at 18. Second, plaintiffs assert that members of the Board of Review are selected in violation of the Appointments Clause. *Id.* at 18–19.[5] Defendants, in contrast, claim that the new Board of Review is merely "an advisory body, whose task is to make recommendations to the Airports Authority." Memorandum of Points and Authorities in Support of Defendants' Cross–Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defen-

**5.** The decision today makes it unnecessary to address plaintiffs' corollary claim that members of Congress serve on the Board of Review in violation of the Incompatibility and Ineligibility Clause, U.S. Const. Art. I, § 6, cl. 2.

dants' Mem.") at 2. As such, defendants assert that the new Board of Review neither is an agent of Congress nor exercises significant federal authority. *Id.*

### A. *The Powers of the Board of Review*

▮ Plaintiffs first argue that the Board of Review cannot exercise its prescribed functions consistent with the Constitution. This challenge focuses on the doctrine of separation of powers and the requirements of bicameralism and presentment. The doctrine of separation of powers prohibits Congress, either directly or through its agents, from exercising executive power. *See Bowsher v. Synar,* 478 U.S. 714, 733, 106 S.Ct. 3181, 3191, 92 L.Ed.2d 583 (1986). Similarly, Congress, either directly or through its agents, cannot exercise legislative power without complying with the requirements of bicameralism and presentment. *CAAN I,* 501 U.S. at ——, 111 S.Ct. at 2312; *see INS v. Chadha,* 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983).

▮ To demonstrate that the Board of Review is constitutionally deficient, therefore, plaintiffs must show that the Board of Review is an agent of Congress and that it exercises some type of federal power. Plaintiffs have established both elements.

To reiterate, briefly, to qualify for membership on the Board of Review, a person must: (1) have experience in aviation matters and in addressing the needs of airport users; (2) be a frequent user of the metropolitan Washington airports; and (3) not be a registered voter in Maryland, Virginia, or the District of Columbia. 1991 Amendments § 7002(b)(2)(C). The Airports Authority selects the members of the Board of Review, but it can only choose those individuals that either the Speaker or the President *pro tempore* recommend. If the Airports Authority is dissatisfied with the candidates recommended, it can request additional names for consideration. The Airports Authority can remove members of the Board of Review for cause by a two-thirds vote.

These criteria and conditions create an entity that is unquestionably an agent of Congress. Although Congress divested itself of removal power, it retained appointment power and ensured that many members of Congress—and few others—will be eligible to serve on the Board of Review. Further, and more fundamentally, either the Speaker or the President *pro tempore* must select every member of the Board of Review. Although the Airports Authority may request additional names for consideration, it is forced to choose only those individuals recommended by Congress. Congress, therefore, retained extraordinary control over the composition of the Board of Review; the Board of Directors is without power to appoint anyone who has not received a recommendation from the congressional leadership.

Moreover, Congress clearly did not address the concerns that the Supreme Court expressed in *CAAN I.* In *CAAN I,* the Court declared that the original Board of Review mandated separation of powers review because it was "an entity created at the initiative of Congress, the powers of which Congress has delineated, the purpose of which is to protect an acknowledged federal interest, and membership in which is restricted to congressional officials." —— U.S. at ——, 111 S.Ct. at 2308. Pursuant to the 1991 Amendments, the Board of Review is still an entity created at the initiative of Congress, the powers of which Congress has delineated, and the purpose of which is to protect an acknowledged federal interest. The only change is that membership is not restricted to congressional officials, but rather to those selected by congressional officials. This superficial change is insufficient to insulate the Board of Review from constitutional scrutiny.[6]

The more provocative question is whether the Board of Review exercises federal power. And the answer is "yes." Pursuant to the 1991 Amendments, the Board of Review no longer has the power to veto actions of the Board of Directors. The Board of Review does, however, exercise significant control

---

6. Interestingly, eight of the nine members of the original Board of Review were promptly appointed to the new Board of Review.

over the Airports Authority and management over its core aspects of operation through its power to make "recommendations." In fact, the new Board of Review has power to influence more actions than the old Board of Review. In addition to control over the adoption of a budget, authorization for the issuance of bonds,[7] the promulgation of regulations, the adoption of a master plan, and the appointment of a chief executive officer, the new Board of Review can control the award of contracts, any terminal design or modification, and any land transaction. 49 U.S.C.App. § 2456(f)(4)(B); 1991 Amendments § 7002(d)(1)(E).

Upon receipt of a "recommendation" from the Board of Review, the Airports Authority has two choices. It can adopt the recommendation, at which point the proposal with the recommendation takes effect. 1991 Amendments § 7002(d)(2)(D). If the Airports Authority does not adopt a recommendation, it must transmit a detailed description of the proposed action to Congress. The action cannot take effect until after the expiration of sixty calendar days, "excluding Saturdays, Sundays, holidays, and any day on which neither House of Congress is in session because of an adjournment *sine die*, a recess of more than 3 days, or an adjournment of more than 3 days," unless Congress acts sooner. 1991 Amendments § 7002(d)(2)(D)(ii). This report and wait provision, in effect, gives the Board of Review power to delay an action of the Board of Directors by as long as six months.

The Airports Authority has a choice: accept the "recommendation" of the Board of Review for immediate enactment of the proposal, or submit the proposal to Congress, wait a potentially lengthy period of time, and hope that Congress does not disapprove the proposal. In short, the Airports Authority must either bow to the will of the Board of Review, or risk the time and uncertainty of congressional action. This power is far more than merely "advisory" as defendants claim; it gives the Board of Review the power to coerce the Airports Authority to comply with any "recommendation." The Constitution does not permit this agent of Congress to play such an influential role in controlling the actions of the Airports Authority. *See Lear Siegler, Inc. v. Lehman*, 842 F.2d 1102, 1108 (9th Cir.1988) (stating that if "Congress 'in effect has retained control,' its action and the statutory provision on which it is based are unconstitutional") (quoting *Bowsher*, 478 U.S. at 735, 106 S.Ct. at 3192), *rev'd on other grounds*, 893 F.2d 205 (9th Cir.1989) (en banc).

## B. *The Appointments Clause*

■ Plaintiffs next argue that the members of the Board of Review are selected in violation of the Appointments Clause. The Appointments Clause dictates that the President shall appoint all officers of the United States. U.S. Const., Art. II, § 2, cl. 2. Principal officers must be selected with the advice and consent of the Senate, and the appointment of inferior officers is vested in the President alone. *Id.; see Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The President does not select the members of the Board of Review; they are selected by the Airports Authority from lists provided by the Speaker and President *pro tempore*. If the Board of Review exercises significant executive authority[8], the method of appointing its members is constitutionally defective. *Id.* at 126, 96 S.Ct. at 685; *see Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, ——, 111 S.Ct. 2631, 2640, 115 L.Ed.2d 764 (1991).

■ Defendants assert that there is no Appointments Clause violation because the Board of Review is a nonfederal, interstate agency. Defendants' Mem. at 33–34. This argument clearly is without merit. In *CAAN I*, the Supreme Court determined that "the

---

7. The power to affect the issuance of bonds is particularly critical since the primary reason for the creation of the Airports Authority was because it would have the "power to raise money by selling tax exempt bonds" to finance "necessary capital improvements." *CAAN I*, 501 U.S. at ——, 111 S.Ct. at 2302.

8. In the earlier lawsuit, the Court of Appeals noted that the actions of the Board of Review are "quintessentially executive." 917 F.2d at 56. The sole inquiry here, therefore, is whether the Board of Review exercises significant federal authority.

fact that the Board of Review was created by state enactments is not enough to immunize it from separation-of-powers review." *CAAN I,* 501 U.S. at ———————, 111 S.Ct. at 2306–07. Defendants do not advance any reason why an Appointments Clause analysis should be any different. The strong federal interest of the Airports Authority plainly warrants Appointments Clause review.

Defendants also argue that the Board of Review does not exercise significant federal authority. Defendants' Mem. at 33. The Court has already considered and rejected this argument in the context of separation of powers and holds also that the members of the Board of Review are selected in violation of the Appointments Clause.

### III. *Conclusion*

The Board of Review plays a pivotal role in the administration of the Metropolitan Washington Airports Act. It exercises significant executive powers delegated to it by Congress, which created the Board of Review and over which Congress continues to wield considerable control. This unconstitutionally violates separation of powers principles and the Appointments Clause.

Since the provisions regarding the Board of Review in the Metropolitan Washington Airports Act Amendments of 1991 have this date been found unconstitutional and the Board of Review must be, and is, invalidated, the MWAA is without authority "thereafter" to carry out those actions the Board of Review is required to oversee. 49 U.S.C.A.App. § 2456(h). It is, therefore, essential to direct (as did the Circuit Court) that "actions taken by the Board [of Review] to this date not be invalidated automatically on the basis of [this] decision." *CAAN I,* 917 F.2d at 57–58; *see Buckley v. Valeo,* 424 U.S. 1, 142, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976).

While there shall be no stay for the reasons noted herein, the Court clearly recognizes the impact of this decision and the immediate jeopardy of operations at both Washington National Airport and Dulles International Airport. I strongly urge that prompt review be given this matter in the Circuit Court and/or in Congress.

Therefore, for the reasons stated above, it is hereby

ORDERED that plaintiffs' motion for summary judgment is granted; it is

FURTHER DECLARED that the Board of Review is unconstitutional and its actions invalid from the date of this order; it is

FURTHER ORDERED that defendants' motion for summary judgment is denied.

IT IS SO ORDERED.

### *JUDGMENT*

In accordance with the Memorandum Opinion and Order issued this date, judgment is hereby entered in favor of plaintiffs John W. Hechinger, Sr., Craig H. Baab, and Citizens for the Abatement of Aircraft Noise, Inc., and against defendants Board of Review and Metropolitan Washington Airports Authority.

IT IS SO ORDERED.

### *MODIFICATION OF JANUARY 31, 1994 MEMORANDUM OPINION AND ORDER*

Defendants, supported by the United States, urge the Court to reconsider its January 31, 1994, Memorandum Opinion and Order ("Opinion and Order") insofar as that decision denied a stay of the judgment. Plaintiffs oppose this request, arguing that a stay would permit defendants to continue their unconstitutional actions and, ultimately, cause irreparable harm to plaintiffs. Alternatively, plaintiffs assert that any stay be limited in duration to no more than thirty days to permit Congress to act and the defendants to seek expedited review in the Court of Appeals.

 This Court recognizes its right to grant a stay pending appeal in cases in which it has declared a statute unconstitutional. *See Bowen v. Kendrick,* 483 U.S. 1304, 1304–05, 108 S.Ct. 1, 1, 97 L.Ed.2d 787 (1987). Although initially inclined to deny the stay, the Court will re-examine that decision in light of the relevant factors: (1) the likelihood that the party seeking the stay will prevail on appeal; (2) the likelihood that party seeking the stay will be irreparably harmed; (3) the likelihood of harm to others

**910**

if the stay is granted; and (4) the public interest in granting the stay. *Cuomo v. United States Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C.Cir.1985) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977)).

■ It is, of course, difficult for the Court to conclude that defendants are likely to succeed on appeal. Nonetheless, recognizing the presumption of constitutionality of congressional action and that the other factors weigh in defendants' favor, a limited stay will be granted.

The immediate harm to defendants will indeed be irreparable absent a limited stay. Many capital improvement projects, an extensive concession contract, and other airport improvements were pending before the Board of Review on the date of this Court's order. These projects, which benefit not only the defendants but the public in its entirety, cannot proceed in the absence of a limited stay. Furthermore, defendants have assured the Court that, as to these pending matters, "the Board of Review *had not and will not make a recommendation. . . .*" Memorandum of Points and Authorities in Support of Defendants' Motion for Modification or Clarification of the Court's Opinion and Order of January 31, 1994 and for Stay of the Judgment and of the Effective Date of the Opinion and Order, Pending Final Resolution of the Appeal at 3 (emphasis added).

On the other hand, any harm to plaintiffs is not immediate. Plaintiffs admit that they "may not have a particular interest" in the pending matters, but state that "At some point, the major decisions solidifying the expansionist course will be completed." Plaintiffs' Opposition to Defendants' Motion for a Stay and Motion for Modification or Clarification of this Court's Opinion and Order at 2, 6. This speculative harm does not outweigh the immediate harm to defendants in the absence of a stay.

This case, however, does not justify the indefinite stay that defendants seek. Such a stay might ultimately cause irreparable harm to plaintiffs as airport expansion crosses a point of no return. Further, and more critically, an indefinite stay would remove any incentive for defendants to seek expedited review in the Court of Appeals or in Congress.

Upon balancing all the relevant factors, therefore, a stay of seventy-five (75) days from the date of the original Opinion and Order is warranted. Such a stay is long enough to prevent irreparable harm to defendants, and, at the same time, is not too long such that it risks irreparable harm to plaintiffs. It also will permit the Metropolitan Washington Airports Authority ("MWAA") to continue its progress as to those matters for which the Board of Review was not going to exercise its constitutionally offensive power to make "recommendations." Further, a stay of seventy-five days will permit defendants to seek expedited review in the Court of Appeals and/or immediately bring these issues before Congress. Of course, defendants are in no way precluded from making an application to the Court of Appeals for an enlargement of this stay, if and when appropriate.

The Court reiterates its earnest hope that prompt action is taken on this matter. Accordingly, it is hereby

ORDERED that, pursuant to this Court's January 31, 1994 Opinion and Order, all actions taken by the MWAA that were approved by the Board of Directors and submitted to the Board of Review before January 31, 1994, for which the time for review had expired prior to such effective date without the Board of Review having made any recommendation thereon, remain lawful, valid, and effective, and the MWAA can perform such actions, including the issuance of bonds that have been previously authorized; it is

FURTHER ORDERED that this Court's January 31, 1994 Opinion and Order is modified as follows: actions taken by the Board of Directors of the MWAA, which were submitted to the Board of Review before the effective date of this Court's Opinion and Order and which were still pending before the Board of Review on the effective date of such Opinion and Order but concerning which the Board of Review had not made any recommendation, and will not be making any recommendation, are lawful, valid, and effective,

and the MWAA can perform such actions, including the issuance of bonds that have been previously authorized; it is

FURTHER ORDERED that the issuance of the Judgment and the effective date of the Court's Opinion and Order dated January 31, 1994 are stayed from the date thereof for a period of seventy-five (75) days provided that defendants file a Notice of Appeal in the United States Court of Appeals for the District of Columbia Circuit on or before February 22, 1994.

IT IS SO ORDERED.